[No. 2365–3.   Division Three.   July 27, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIAL J. McKENNEY, *Appellant.*

*Collins & Hansen* and *Clifton W. Collins,* for appellant.

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *James A. Whitaker, Deputy,* for respondent.

McINTURFF, J.—Appointed counsel for Danial J. McKenney, an indigent defendant, appeals from an order granting $700 as attorney's fees on the ground the amount is inadequate.

Mr. McKenney was charged with felony possession of a controlled substance. When he represented to the court that he was indigent, Tom G. Cordell of the Ephrata firm of Collins and Hansen was appointed by the court to represent him. At the time of the appointment Mr. Cordell was not present nor was he asked if he would be able or willing to represent Mr. McKenney.

Several constitutional issues were involved in the case—admissibility of statements allegedly made by Mr. McKenney, the validity of a search and seizure of evidence

in his automobile and the legality of his arrest. Although Mr. Cordell continued to plea bargain with the Grant County Prosecutor, he also engaged in necessary pretrial preparation.

There were hearings on a motion to suppress evidence taken from Mr. McKenney and on the voluntariness of the statements allegedly made by him. Six witnesses testified at the first hearing and three at the second. Meanwhile, Mr. Cordell made several 40- to 50-mile trips to neighboring communities to interview witnesses who did not have telephones and whose hostile attitudes required face-to-face consultation. In addition, Mr. Cordell prepared the case for presentation to a jury and researched the applicable law for the submission of proposed jury instructions.

Following a 1-day trial, a jury acquitted Mr. McKenney on February 22, 1977. Mr. Cordell later submitted a petition for payment of attorney's fees, representing that he spent 56 hours and 30 minutes in defending the matter and advanced $60.99 for necessary costs. The court awarded $700 for attorney's fees and $33.94 for costs advanced. Mr. Cordell moved for reconsideration of the award, and, after a hearing involving eight witnesses, the court denied the motion.

At the time of the trial, Mr. Cordell had been a member of the Washington State Bar for about 5 months, but there was no question about the quality of his representation.[1] Instead, much of the testimony taken during the hearing on the motion for reconsideration concerned the amount of time spent by Mr. Cordell on the case and the amount of overhead spent by the firm in order to employ him.

On the question of the time spent by Mr. Cordell, two witnesses said 56 1/2 hours was not an unreasonable

---

[1] The deputy prosecutor, James A. Whitaker, who tried Mr. McKenney testified, "I will state right now, at trial while it may have been Mr. Cordell's first, I feel he did an excellent job." Nels A. Hansen, a partner in the firm, was asked: "Did Mr. Cordell do what you call a workmanlike job?" He replied, "He did an excellent job."

amount considering the number of court appearances, witness interviews, trial and necessary research work.[2] Furthermore, there was evidence that Mr. Cordell spent more time than that for which he sought compensation[3] and that he consulted with more experienced members of the firm whose time was not considered in the application for attorney's fees.[4]

On the question of overhead chargeable by the firm to the employment of Mr. Cordell, one of the firm's principals prepared an affidavit and testified about the costs of run-

[2]Clinton J. Merritt, an attorney for 7 years with prosecutorial and criminal defense experience and a member of the Ephrata firm of Milne and Merritt, said he examined the ledger billing sheets prepared by Mr. Cordell and found that 56 1/2 hours was a reasonable amount of time to have spent on the case. He testified:

I made the observation that this was Mr. Cordell's first jury trial, and that I felt in that situation question arose in my mind as to whether he might have spent more time on this, than a lawyer who had had extensive experience in a crime case of this sort. I asked him about this, and he explained to me he had factored his time. We went over his timesheets, and there were particular situations that we looked at where he had spent the entire day, or all but maybe 25 minutes of an entire day, but yet only recorded three or four hours for the time. With that view, in his handling in that manner, that was the basis of my opinion that his 56 1/2 hours was reasonable.

Mr. Hansen, an attorney for 6 years, testified:

I think that's a very reasonable amount of time to charge to a case. If I had a fee-paying client, I would tell him that the bill on a case like that would be between three and five thousand dollars. Furthermore, I don't think I could have done that case in less than 56 1/2 hours.

[3]See footnote 2.

[4]Mr. Hansen testified: "He conferred with me through each of the phases [of the case], and having not run the gamut of a criminal case before, I had numerous discussions with him about the procedural matters to be followed. That is, what kind of motions you can find. When you have them, what you do. Things like that. I spent quite a bit of time just following through the procedural steps with him. Also might add another area we spent quite a bit of time was jury selection. I discussed jury selection, explained the process, and then told him how to voir dire. I gave him reference material on that. We spent time on the jury selection process. He had never seen it done before."

ning their practice.[5] Essentially, they determined that the overhead cost per hour for Mr. Cordell was $21.26. The per hour award for time and fees expended by Mr. Cordell in the defense of Mr. McKenney amounted to $12.34. As a result, they felt the award should have been increased in the amount of $530.74 simply to cover the firm's overhead. They suggested that an award of $30 per hour, which several witnesses considered to be a reasonable hourly rate, would adequately cover overhead and still provide a margin of profit for the firm.

In addition, the firm introduced an exhibit detailing the per hour award to appointed counsel for indigent criminal clients in Grant County. In only 3 of the 24 cases reported was the per hour award less than $20; in 11 of them it was

---

[5]Clifton W. Collins, who prepared the affidavit, testified that the per–hour overhead costs as submitted in his affidavit may actually have been conservative. Nonetheless, the following is taken from his affidavit:

TOTAL BASIC OFFICE OVERHEAD:

| | | |
|---|---|---|
| Average office overhead cost per month for each of five law members | | $1,514.55 |
| Monthly payment to Attorney Tom G. Cordell | $1,000.00 | |
| Social Security | 58.50 | |
| | | 1,058.50 |
| Monthly Cost to Collins and Hansen for Tom G. Cordell | | $2,573.05 |

A survey of our own time logs and in discussions with other offices indicates that 5 1/2 hours per day of productive legal time is logged. This has nothing to do with collection of charges for time billed.

Assuming 22 work days per month will result in 121 hours per month logged time.

| | | |
|---|---|---|
| Overhead cost per hour for Tom G. Cordell | $21.26 | |
| Total amount awarded for fees and costs for Tom G. Cordell | | $733.94 |
| Per hour award for time and fees on above case of 59 hours and 30 minutes | 12.34 | |
| Deficiency cost per hour to Collins and Hansen office | $ 8.92 | |
| Total deficiency in this case to Collins and Hansen 59.5 hours x $8.92 | | $530.74 |

This above figure makes no allowance for any profit to the firm.

To clarify the apparent conflict between the above affidavit concerning 59.5 hours and the use of 56.5 hours throughout this opinion, Mr. Collins stated on cross–examination that he made a mistake when they used 59.5 hours in the affidavit and that they billed the court 56.5 hours at the time of the petition.

$30 or more. In none of them was the per hour award as low as that computed for Mr. Cordell.

Nonetheless, the court refused to reconsider the amount of attorney's fees and costs. The court indicated concern over the perplexing problem of proper compensation for counsel appointed to represent indigent defendants and felt that the time spent by Mr. Cordell was more than that necessary to provide an adequate defense for Mr. McKenney. The court's position is essentially summarized by the following excerpt from its oral decision following the hearing on the motion to reconsider.

> If I was Mr. Cordell I wouldn't feel bad about it only passing the Bar in October of '76 and this being his first jury case, February 22, '77. . . .
>
> . . . Now, he had the time to expend all those hours, but by any stretch of the imagination I can't see where, but a three–quarter day trial, testimony; or, let's say one day including the argument to the jury, instructions, picking the jury. The whole thing that the court is able to pay—I should say the county is able to pay, $1,695 attorney fee. If that is done in every case, it's going to be necessary that the county commissioners open up the purse strings, for I'm not going to ask. It's in the record, but the number of cases that are tried in 'Grant County, criminal cases where attorneys are appointed, if they run like that even for one–day cases, I don't believe the taxpayers, or the county commissioners are going to pay it. Of course, the taxpayers haven't got much to say about it. The county commissioners do. . . .
>
> I just can't see paying, including the cost, $1,751.59 for a one–day case. Now, I exercise my discretion. Some may feel I exercised it correctly the way I arrived at it. Some may feel that I didn't. So, I don't know, if it is to be appealed, that the Court of Appeals, or Supreme Court will find as they say, absence of, or manifest abuse of discretion. And I feel I certainly didn't do that, because I spent time before I filled that out, which I've been doing these past ones, and present ones coming up.

■■ In *State v. Lehirondelle*, 15 Wn. App. 502, 550 P.2d 33 (1976), *review denied*, 87 Wn.2d 1011 (1976), this court reversed an award of attorney's fees based on a fee

schedule which resulted in an hourly compensation to the respective appointed attorneys of $17.50 and $14, plus expenses. We said, "We are certain this rate of compensation will not only deny them any profit, but in all probability, will not cover their office overhead." (Footnote omitted.) *State v. Lehirondelle, supra* at 503–04. Particularly relevant is the following passage:

> Court appointed counsel is to be paid a reasonable amount as attorney fees together with reimbursement of actual expenses necessarily incurred by the court's order. The determination of what amount should be paid as reasonable attorney fees is a matter of court discretion. The fee need not be of an amount equal to that from a paying client, but should strike a balance between conflicting interests, including the professional obligation of a lawyer to make legal counsel available and the increasingly heavy burden on the legal profession created by expanded indigent rights. Court appointed counsel should neither be unjustly enriched nor unduly impoverished, but *must* be awarded an amount which will allow the financial survival of his practice. A county *shall* pay a reasonable amount for all professional services which are not donated.

(Footnote omitted.) *State v. Lehirondelle, supra* at 504.

We also said, citing *State v. Mempa,* 78 Wn.2d 530, 536, 477 P.2d 178 (1970), that the court must consider much more than a county bar fee schedule. The court said in *Mempa:*

> It is recognized, ordinarily speaking, that an attorney so appointed may not be entitled to a fee commensurate with that which would be charged or paid had the client involved been able to pay for the services rendered. Factors, of course, which should go into a consideration of the amount to be awarded are the amount of time and effort expended, the nature and extent of the services rendered, the fees paid for similar services in other jurisdictions, the prevailing bar association fee schedules, the traditional responsibilities of the legal profession, the amount of public funds made available for such purposes, and a judicious respect for the taxpaying public as well as the needs of the accused. *The judge before whom the*

*legal services are performed is in a peculiarly advanta-
geous position to consider and evaluate the factors
involved, and his determination will not ordinarily be
disturbed absent a manifest abuse of discretion.*

(Italics ours.)

Essentially, then, to the considerations which make up an
award of attorney's fees to appointed counsel as set out in
*Mempa,* this court in *Lehirondelle* added a concern over
the financial survival of the attorney selected to represent
an indigent defendant. Twice we indicated that awards as
low as those in *Lehirondelle* might not adequately compen-
sate the attorney in today's complex practice.

While the obligation of the attorney to represent indigent
defendants is part of an ancient and established tradition,
*United States v. Dillon,* 346 F.2d 633 (9th Cir. 1965), it is
an obligation under present economic circumstances which
may impose an unreasonable burden. Skyrocketing over-
head costs have greatly changed the lawyer's financial pic-
ture, amounting to as much as one–half his gross income.[6]
Complicated office equipment, library expenses, staff, rent,
the telephone and other expenses take their toll. In addi-
tion, time spent representing an indigent defendant is time
the attorney cannot spend on more profitable matters.
Thus, inadequate compensation for representing an indi-
gent is doubly harmful.

In a study by the Washington State Bar Association
made in 1975, it was reported:

Where attorney compensation [for representing indigent
defendants] was very low, the quality of representation
for indigent criminal accused suffered, the experience
and training of participating attorneys was more limited,
and attorneys saw their clients less frequently. The study
found that where compensation was not related to work
done by means of different fees for cases taken to trial,
etc., there was an economic disincentive against satisfac-
tory representation of the accused.[7]

---

[6]*See State v. Rush,* 46 N.J. 399, 217 A.2d 441, 448 (1966); R. Hunter, *Slave
Labor in the Courts—A Suggested Solution,* Case & Comment 3, 8–9 (July–
August 1969).

[7]Methods of Providing Representation for Indigent Criminal Accused (A
Study by the Washington State Bar Association, 1975) at 4. The report noted, at
page 15:

Others have noted similar problems:

> Assigned counsel should be paid a fee comparable to that which an average lawyer would receive from a paying client for performing similar services. Most presently proposed standards for compensation of assigned counsel call for a fee which is less than could be commanded in private practice. It has been argued that these standards are sufficient, because it is part of a lawyer's obligation as a member of the Bar to contribute his services to the defense of the poor. But these standards unavoidably impose a stigma of inferiority on the defense of the accused.[8]

Finally, as the Report of the Conference on Legal Manpower Needs of Criminal Law noted, "Respect for law and the administration of justice will be increased if publicly compensated counsel does not seem to be obtained at a discount." 41 F.R.D. 389, 415–16 (1966).

As a result of the concern over inadequate compensation for appointed counsel, different compensation schedules have been suggested. For example, two reports recommend that compensation for representing an indigent defendant be on a par with the compensation paid for other legal work in the county.[9] Others, as do our statute and court rule,[10]

The three systems which were characterized by respondents and shown by facts to have definitely inadquate [sic] compensation for attorneys were also the systems which revealed the most frequent weaknesses. Despite the fact that there were indications that attorney dedication was high in nearly all of the systems, the inescapable economic disincentives against spending a great deal of time on public representation at inadequate rates seem to take their toll.

[8]President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: The Courts* 61 (1967), as quoted in Guidelines for Legal Defense Systems in the United States (Report of the National Study Commission on Defense Services, Final Report 271–72, 1976).

[9]See the Washington State Bar Association study cited in footnote 7 and the national study cited in footnote 8.

[10]RCW 10.01.110 provides:
"Whenever a defendant shall be arraigned or first appear before a court, magistrate or justice of the peace upon the charge that he has committed any felony, and the defendant has requested the court to appoint counsel to assist in his

suggest only that the fee be "reasonable."[11] We have rejected the use of a fee schedule and have continued to demand that the amount of the attorney's compensation be left to the discretion of the trial court. *State v. Lehirondelle, supra.*

We are not unmindful of the problems such a rule creates for appointed counsel, see ABA Standards Relating to Providing Defense Services, commentary to § 2.4 at 31 (Approved Draft 1968), or for the court which must determine the amount of compensation. Yet, as the court said in *Mempa,* and as we emphasized in *Lehirondelle,* the judge before whom the services were performed has a better opportunity to evaluate the necessary elements upon which compensation shall be based.

Here there was (1) evidence concerning the amount of hourly overhead chargeable to the practice of the appointed attorney, (2) evidence regarding a reasonable amount of hourly compensation for similar legal work within the community ($30), (3) evidence as to a reasonable amount of time required to prepare and present such a case, and

---

defense, and shall by his own oath or such other proof as may be required satisfy the court that he is unable, by reason of poverty, to procure counsel, the court shall appoint counsel, not exceeding two, for such defendant. *Counsel so appointed shall be paid a reasonable amount as attorney's fees together with reimbursement of actual expenses necessarily incurred upon the court's order by the county in which such proceeding is had: Provided,* That this section shall also apply to such other proceedings and at such other time as may be constitutionally required." (Italics ours.)

The comment to CrR 3.1 states that the rule supersedes the statute, but the rule does not consider the question of compensation except for "services other than counsel." *See* CrR 3.1(f).

[11]The ABA Standards Relating to Providing Defense Services § 2.4 (Approved Draft 1968) provides:

Assigned counsel should be compensated for time and service necessarily performed in the discretion of the court within limits specified by the applicable statute. In establishing the limits and in the exercise of discretion the objective should be to provide reasonable compensation in accordance with prevailing standards.

(4) no evidence of the government's inability to provide adequate compensation for appointed counsel. Nonetheless, the court's award represents only one–half of the overhead chargeable to Mr. Cordell and less than one–half of what is considered a reasonable compensation for similar legal work in the community. While the court was aware of the considerations involved in determining the amount of fees for appointed counsel, there is no reasonable relationship between those considerations and the amount of fees awarded to Mr. Cordell. Furthermore, there is nothing in the court's oral opinion to support such a low award in light of the uncontroverted evidence concerning the factors involved in establishing a reasonable attorney's fee.

Although we are always reluctant to disturb a discretionary ruling of the trial court, we do not find in the record anything to support the court's exercise of discretion here. Its award of attorney's fees bears no relationship to the evidence presented and is inadequate. Courts determining the amount of fees to be paid to *appointed* counsel must become more concerned with the financial survival of the lawyer's practice.

The judgment of the Superior Court is reversed, and the case is remanded for reconsideration of the amount of attorney's fees, including an award for costs and reasonable fees on appeal.

MUNSON, C.J., and ROE, J., concur.