130 P.3d 852 (2006)
132 Wash.App. 98
STATE of Washington, Appellant,
v.
Buckley James PERALA, Respondent.
State of Washington, Appellant,
v.
Tye J. Hendrickson, Respondent.
State of Washington, Appellant,
v.
Leeah June Lopez, Respondent.
State of Washington, Appellant,
v.
Steven Ray Costello, Respondent.
State of Washington, Appellant,
v.
Melinda K. McCollum, Respondent.
State of Washington, Appellant,
v.
Jane Marie Enfield, Respondent.
State of Washington, Appellant,
v.
Shelly Lynn Davis, Respondent.
State of Washington, Appellant,
v.
Jeffery John Cole, Respondent.
State of Washington, Appellant,
v.
Hector Anibal Alvarez Flores, Respondent.
State of Washington, Appellant,
v.
Ruben Tamez Jasso, Respondent.
State of Washington, Appellant,
v.
Felipe Cortes Barajas, Respondent.
State of Washington, Appellant,
v.
Michael Henry Villegas, Respondent.
State of Washington, Appellant,
v.
Pavel Danilovitch Grib, Respondent.
State of Washington, Appellant,
v.
Heidi Ann Hawk, Respondent.
State of Washington, Appellant,
v.
Dustin Gene Abrams, Respondent.
State of Washington, Appellant,
v.
Shane Edward Robinson, Respondent.
State of Washington, Appellant,
v.
Dagan Denson Anderson, Respondent.
State of Washington, Appellant,
v.
Dagan Denson Anderson, Respondent.
State of Washington, Appellant,
v.
Maria Socorro Chipres Zepeda, Respondent.
State of Washington, Appellant,
v.
Jennifer Jean Rogers, Respondent.
State of Washington, Appellant,
v.
Alfredo Diaz Quintero, Respondent.
State of Washington, Appellant,
v.
Timothy A. McDonald, Respondent.
State of Washington, Appellant,
v.
Kimberly Ann Stark, Respondent.
State of Washington, Appellant,
v.
Gregory Alexander Clark, Respondent.
Nos. 23151-8-III, 23149-6-III, 23150-0-III, 23152-6-III, 23153-4-III, 23154-2-III, 23155-1-III, 23157-7-III, 23158-5-III, 23159-3-III, 23161-5-III, 23162-3-III, 23166-6-III, 23167-4-III, 23168-2-III, 23169-1-III, 23170-4-III, 23171-2-III, 23348-1-III, 23440-1-III, 23441-0-III, 23442-8-III, 23443-6-III, 23445-2-III.
Court of Appeals of Washington, Division 3.
March 16, 2006.
*856 John D. Knodell, Prosecuting Attorney, Gerald J. Moberg, Canfield & Associates Legal Department, Ephrata, WA, for Appellant.
William J. Plonske, Attorney at Law, Steven D. Talbot, Carl N. Warring, Warring Law Firm PS, Moses Lake, WA, Ronald A. Hammett, Attorney at Law, Okanogan, WA, Clarke W. Tibbits, Bell Law Office, Earl Wesley Hensley, Attorney at Law, Wenatchee, WA, Mark Stansfield, Brian M. Chase, Attorneys at Law, Quincy, WA, for Respondents.
THOMPSON, J.[*]
¶ 1 This case is consolidated from over 20 different actions brought by the State and Grant County (hereinafter referred to as the State). However, the allegations of error in these multiple actions all hinge on resolution of the same issues. The State in each case challenges the failure of the Grant County Superior Court judges to recuse themselves and the judges' subsequent decisions regarding compensation for court appointed counsel. The State first alleges that the trial courts abused their discretion in denying the State's motions for recusal of all Grant County Superior Court judges from any motions for approval of attorney fees for indigent defense services. Second, the State argues that the trial courts lacked authority to award attorney fees since the funds were not appropriated by law. Finally, the State claims that the fees awarded by the courts were excessive.
¶ 2 Although these cases were all tried separately in superior court, many of the hearings were held back to back on the same days. Because we have chosen to consolidate the appeals, we will refer to the various trial courts in the singular.

MOTION TO SUPPLEMENT THE RECORD
¶ 3 As a preliminary matter, the State has made a motion to this court to supplement the record with various materials, including correspondence between the trial court and the Grant County Board of County Commissioners (hereinafter referred to as board of county commissioners or board).
¶ 4 The State's original motion to supplement the record was granted by the trial court. However, the trial court appears to have believed that authority to supplement the record was limited by RAP 7.2(e). RAP 7.2(e) permits the trial court to decide postjudgment motions that are authorized by civil rules, criminal rules, or statutes. However, if the trial court's decision would change a decision then being reviewed by the appellate court, permission of the appellate court must be obtained before the trial court can enter a formal decision. RAP 7.2(e). The trial court was uncertain as to whether its decision to permit the State to supplement the record would change a decision in a case currently before this court. For this reason the trial court directed the State to seek permission from this court.
¶ 5 The trial court already had the inherent authority to include these supplemental materials as part of the trial record under RAP 7.2(b). Pursuant to RAP 7.2(b) the trial court has the authority to settle the record on appeal. This authority includes the authority to supplement or expand the *857 record where it is incomplete. See RAP 7.2(b).
¶ 6 The trial court granted the State's motion to supplement the record by letter. This letter states that these documents were reviewed by the trial court in considering the motions for recusal. Because it was within the trial court's authority to permit these materials to be incorporated into the trial record, we permit formal entry of the trial court's decision.

FACTS
¶ 7 In February 2004, Grant County terminated its contract with the contract public defender, Thomas Earl, based on his suspension from practice pending disbarment. As a result, Grant County was without a felony public defender. Mr. Earl had approximately 60 active cases at that time and new criminal cases arose in the county at the rate of over 90 per month.
¶ 8 There were other public defender subcontractors who initially tried to absorb the indigent defense cases. Unfortunately, this resulted in the subcontractors receiving 21 cases in addition to their regular caseload, which the trial court determined was too significant an increase for the public defense subcontractors to manage effectively. In the absence of available criminal indigent defense counsel, the trial court sought volunteer attorneys who would be willing to provide defense services for reasonable compensation.
¶ 9 However, the volunteer attorneys quickly became overwhelmed with the volume of cases that they were being assigned and the trial court exhausted the local bar for volunteers. Therefore, the court began appointing attorneys from the local bar in Grant County. Initially, 49 attorneys were placed on a roster for appointments as defense counsel. This system quickly became untenable since many of the attorneys on the list had no criminal defense background and not only were the interests of indigent defendants potentially jeopardized but the attorneys themselves were at risk of committing malpractice.
¶ 10 From the 49 attorneys, the trial court decided to appoint 14 who had some experience in criminal defense. The trial court also was forced to appoint attorneys from neighboring counties to take on a small number of criminal cases in exchange for reasonable compensation. The trial court determined that a preliminary figure of 82.5 percent of the appointed attorneys' normal billing rate was the presumptive rate of compensation; but the court also reserved the right to adjust the figure up or down.
¶ 11 After almost two months without any public defense system, the county signed public defense contracts with other attorneys on April 12, 2004. The county urged the trial court to immediately transfer the 103 pending cases that were being handled by appointed counsel to the new contractors. Based on the current and backlogged caseloads that the contract public defenders were already handling, the trial court decided that the new public defenders were unable to take on the additional cases that were assigned to appointed counsel.
¶ 12 Throughout the period during which Grant County lacked a public defense system, the trial court (primarily through Judge Evan Sperline) and the board of county commissioners maintained contact and correspondence in order to create and implement the emergency public defense system. Over time, these communications began to center on the dispute involving payment to appointed counsel.
¶ 13 The State by motion asked all Grant County Superior Court judges to recuse themselves from any hearings setting compensation for appointed counsel. The motion was filed on May 26, 2004, the same day hearings were set for determining the compensation issue on a number of cases. The State argued that it would create an appearance of impropriety for any of these judges to hear arguments regarding reasonable compensation since the judges had previously established a general policy to pay appointed counsel 82.5 percent of their regular fee for criminal defense work. The State further asserted that by instituting and supporting such a policy with regard to compensation, *858 the trial court was engaging in advocacy on behalf of appointed counsel.
¶ 14 At the same time, the State also challenged the trial court's authority to disburse any funds to compensate appointed counsel based on the constitutional requirement that these funds must first be appropriated by law. The appointed counsel did not receive copies of any of the State's briefs prior to May 26.
¶ 15 The trial court proceeded to hold hearings in order to determine and award reasonable compensation for appointed counsel. In each case, the trial court considered the precise number of hours each attorney spent on his or her case; the normal fee that the attorney charged for criminal defense services, overhead costs of his or her private practice; years of experience; and any time, expenses, or services that each attorney was willing to donate. In many cases, the trial court awarded less than the amount submitted by appointed counsel or less than the presumptive rate of 82.5 percent of the attorney's standard fee.
¶ 16 The State continued to present motions for recusal in subsequent hearings regarding compensation for appointed counsel. It appears from the records that opposing counsel was not given prior notice of any of these motions to recuse. The State argued that the trial court should limit compensation for appointed counsel to a maximum of $50 per hour with a maximum of $550 per case. In the alternative, the State also suggested paying appointed counsel reimbursement for costs and overhead, but no compensation beyond overhead. The trial court uniformly rejected the State's suggested levels of compensation.
¶ 17 The State appeals the trial court's orders of compensation to the attorneys who were appointed to provide indigent criminal defense services.

ANALYSIS

I. Motions for Recusal
¶ 18 "Due process, the appearance of fairness, and Canon 3(D)(1) of the Code of Judicial Conduct require disqualification of a judge who is biased against a party or whose impartiality may be reasonably questioned." Wolfkill Feed & Fertilizer Corp. v. Martin, 103 Wash.App. 836, 841, 14 P.3d 877 (2000). Recusal lies within the discretion of the trial judge, and his or her decision will not be disturbed without a clear showing of an abuse of that discretion. Id. at 840, 14 P.3d 877. The court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. Id. This court also reviews a trial court's determinations of the timeliness of a motion for abuse of discretion. Kreidler v. Eikenberry, 111 Wash.2d 828, 832, 766 P.2d 438 (1989).
¶ 19 "The trial court is presumed . . . to perform its functions regularly and properly without bias or prejudice." Wolfkill, 103 Wash.App. at 841, 14 P.3d 877. "The party moving for recusal must demonstrate prejudice on the judge's part." In re Parentage of J.H., 112 Wash.App. 486, 496, 49 P.3d 154 (2002).

Ex parte communications
¶ 20 The State asserts that the trial judges engaged in improper ex parte meetings and contacts to establish a presumptive rate of pay for appointed counsel prior to the actual hearings on compensation. The Supreme Court has recently clarified what constitutes an improper ex parte communication in State v. Watson, 155 Wash.2d 574, 122 P.3d 903 (2005).
¶ 21 The communication at issue in that case was a letter circulated by the Pierce County prosecutor's office to all Pierce County Superior Court judges, the Department of Corrections, and the Department of Assigned Counsel stating that the prosecutor's office would no longer recommend alternative sentences for drug offenders. Watson, 155 Wash.2d at 575-76, 122 P.3d 903. The Court of Appeals had held that this letter constituted an improper ex parte communication, but that it did not harm Mr. Watson.
¶ 22 In reviewing the Court of Appeals decision, the Supreme Court disagreed with the conclusion that the letter was an ex parte communication. The court defined an ex parte communication as a "`communication *859 between counsel and the court when opposing counsel is not present.'" Id. at 579, 122 P.3d 903 (quoting BLACK'S LAW DICTIONARY 296 (8th ed.2004)). The court also noted that an ex parte communication is something made by a party to an action. Id. This definition of an ex parte communication assumes that there is an actual proceeding involving counsel and opposing counsel before the court, and that the communication is regarding that proceeding. Id. Where, as here, the communication occurs prior to any specific proceedings, that contact is not an ex parte communication.
¶ 23 The court also pointed out that this interpretation of ex parte communication is consistent with case law. In examining its usage by the courts, Watson noted that the term "ex parte" usually is only applied to a communication made by or to a judge, during a proceeding, regarding that proceeding, and without notice to a party. Id. Based on this definition of ex parte contact, the court determined that the letter from the Pierce County prosecutor's office was not an improper ex parte contact.
¶ 24 Like the letter from the prosecutor's office that was at issue in Watson, the correspondence and communications between the judges and the board of county commissioners were not connected to any specific proceeding. These communications were primarily aimed at the administrative task of setting up a functional interim public defense system. They were not about a proceeding or made without notice to a party to a proceeding. As such, the communications were not ex parte communications.

Appearance of fairness
¶ 25 Even if the communications and statements made by the judges were not improper ex parte communications, the trial judges may still have erred in not recusing themselves if not doing so violated the appearance of fairness doctrine.
¶ 26 "`Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.'" State v. Bilal, 77 Wash. App. 720, 722, 893 P.2d 674 (1995) (quoting State v. Ladenburg, 67 Wash.App. 749, 754-55, 840 P.2d 228 (1992)). In order to establish that the trial court's involvement in the matter violated the appearance of fairness, the claimant must provide some evidence of the judge's actual or potential bias. State v. Post, 118 Wash.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992). The critical concern is determining whether a proceeding would appear to be fair to a reasonably prudent and disinterested person. State v. Dugan, 96 Wash.App. 346, 354, 979 P.2d 885 (1999). "`The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that a reasonable person knows and understands all the relevant facts.'" In re Marriage of Davison, 112 Wash.App. 251, 257, 48 P.3d 358 (2002) (quoting Sherman v. State, 128 Wash.2d 164, 206, 905 P.2d 355 (1995)) (internal quotation marks omitted).
¶ 27 Notice to the other party of the filing of a motion for recusal and of the time for the hearing on the motion is generally required. See State ex rel. Dunham v. Superior Court, 106 Wash. 507, 509, 180 P. 481 (1919). Moreover, a litigant who proceeds to trial "knowing of a reason for potential disqualification of the judge waives the objection and cannot challenge the court's qualifications on appeal." Buckley v. Snapper Power Equip. Co., 61 Wash.App. 932, 939, 813 P.2d 125 (1991).
¶ 28 In this case, the State asserts that the trial court violated the appearance of fairness doctrine because the Grant County Superior Court judges had met prior to the actual hearings on compensation to establish a presumptive rate of pay for the appointed attorneys. However, the State stipulated that the trial court's actions in setting up an interim emergency public defense system were necessary for the functioning of the court. Moreover, the trial court clarified that it reserved the right to depart from the presumptive rate of compensation and indicated that it would consider arguments from the State to reduce that figure if such arguments were made.
*860 ¶ 29 There is evidence that the trial court had publicly adopted the position that the 82.5 percent presumptive rate was a fair starting point and that it was within its authority to determine the overall compensation that appointed counsel received. Of particular note is the fact that Judge Sperline made comments to the local paper in response to the criticisms of one of the Grant County commissioners.
¶ 30 While this conduct may raise the inference that the trial court was engaged in actual advocacy, it is not evidence of the specific bias that the State alleges and must prove. The State does not specifically provide any evidence that demonstrates that the trial court was unwilling to fairly consider the State's requests for reduced compensation. The record also shows that the trial court regularly awarded less than the full presumptive rate of 82.5 percent of standard fees as compensation for appointed counsel.
¶ 31 In light of this background, a reasonably prudent and disinterested person would not necessarily conclude that the trial court was unwilling to hear argument from the State and consider making a downward departure from the presumptive rate of pay.
¶ 32 Additionally, the trial court did not abuse its discretion in denying the motions for recusal as untimely. The timeliness of the motions at issue here is governed by CR 6. See CrR 8.1. CR 6(d) requires that these written motions must be served at least five days prior to the time when they are to be heard. Here, there was no prior service of the motions for recusal. Opposing counsel was not given the opportunity to prepare a response to the State's claims of bias. The untimeliness of the motions to recuse was one of the primary reasons given by the trial court for its denial. The trial court was acting within its discretion when it denied the State's motions to recuse based on the lack of prior service and notice of these motions.

II. Authority to Award Attorney Fees
¶ 33 The State also argues that the trial court exceeded its authority and violated the Washington Constitution when it awarded attorney fees to court appointed counsel, despite the fact that the funds to pay those attorneys had not been specifically appropriated.
¶ 34 The Washington Constitution provides that no moneys can be paid out of the treasury of the state except those which have been appropriated by law. CONST. ART. VIII, § 4. "This constitutional limitation on expenditure of public funds applies to counties." Moore v. Snohomish County, 112 Wash.2d 915, 920, 774 P.2d 1218 (1989). Where a statute does not specifically authorize or obligate the county to pay, payment is prohibited. Id. at 921, 774 P.2d 1218. The purpose of this constitutional prohibition is to prevent the expenditure of public funds without legislative direction and without the sanction of a legislative body. Mason-Walsh-Atkinson-Kier Co. v. Dep't of Labor & Indus., 5 Wash.2d 508, 513-14, 105 P.2d 832 (1940).
¶ 35 A question of constitutional interpretation is a question of law that is reviewed de novo by this court. State v. Norman, 145 Wash.2d 578, 589, 40 P.3d 1161 (2002). The question of whether there has been a proper appropriation of expended public funds is properly to be decided by the courts. See State ex rel. Day v. Martin, 64 Wash.2d 511, 521, 392 P.2d 435 (1964). While there is no particular form of expression that is constitutionally required for the court to find appropriation by law, the language of the statute may be sufficient to show that the intention of the legislature was to appropriate. State ex rel. Brainerd v. Grimes, 7 Wash. 191, 193, 34 P. 833 (1893). When interpreting the language of a statute, this court must construe the statute so as to give effect to all words. Gilbert H. Moen Co. v. Island Steel Erectors, Inc., 128 Wash.2d 745, 762, 912 P.2d 472 (1996).

Statutory authority for the appointment of counsel and award of compensation
¶ 36 Generally, the board of county commissioners for each county is required to provide for the compensation of the public defender for that county. RCW 36.26.060. However, RCW 36.26.090 also permits a trial court on its own motion, and for good cause *861 shown, to appoint an attorney who is not a public defender to represent an indigent accused at any stage of criminal proceedings and on appeal. This provision further provides that:
The court shall award, and the county in which the offense is alleged to have been committed shall pay, such attorney reasonable compensation and reimbursement for any expenses reasonably and necessarily incurred in the presentation of the accused's defense or appeal....
RCW 36.26.090 (emphasis added).
¶ 37 This statute makes it mandatory for the court to award reasonable attorney fees to any attorney who is appointed by the court as counsel for an indigent criminal defendant. The provision also makes clear that the county is obligated to pay reasonable compensation for those services.
¶ 38 Additionally, the plain language of RCW 36.26.090 clearly requires that compensation be available for court appointed counsel beyond mere reimbursement for expenses. This statute requires payment of both reasonable compensation and reimbursement of costs. Because statutes must be read so as to give effect to all of the words, the language of RCW 36.26.090 forecloses the State's argument that merely reimbursing the court appointed counsel for their costs is sufficient to constitute reasonable compensation for their services.
¶ 39 The State relies heavily on the decision of In re Juvenile Director, 87 Wash.2d 232, 552 P.2d 163 (1976) for the proposition that the trial court lacked any authority to disburse funds to compensate and reimburse appointed counsel. That case dealt with a superior court mandate to increase the salary of the county director of juvenile services. 87 Wash.2d at 233, 552 P.2d 163. However, the court in that case focused on the language of the controlling statute, which explicitly required that the amount of compensation for the director be fixed by the board of county commissioners. Id. at 236, 552 P.2d 163. Because the statute unambiguously reserved the authority to set the amount of the salary to the board of county commissioners, the court found that there was no basis to claim the judicial power to do so. Id.
¶ 40 Here, the controlling statute confers authority on the trial court to determine and award the amount of reasonable compensation and reimbursement to be given to appointed counsel. Once the court makes this award, the board of county commissioners is obligated by the legislature to pay this compensation. Therefore, unlike Juvenile Director, the trial court had a statutory basis to exercise its judicial power to award compensation to appointed counsel.
¶ 41 However, legislation that is of a general and continuing nature usually cannot be deemed an appropriation. See Wash. State Legislature v. State, 139 Wash.2d 129, 145, 985 P.2d 353 (1999). While RCW 36.26.090 creates a mandatory obligation for the county to disburse funds to pay for indigent defense, this statutory duty is not of itself an appropriation. We therefore must look to additional sources in order to determine if an appropriation by law was made.
¶ 42 Among the uncontested findings of fact by the trial court was that Grant County had appropriated funds for purposes of providing compensation for indigent defense. These funds totaled over $600,000. This appropriation funded Mr. Earl's contract with Grant County during his term as the contract public defender. This appropriation of funds was not undone or rescinded simply because the contract between Mr. Earl and Grant County was terminated. Because Grant County had specifically earmarked and retained these funds for the purpose of compensating indigent defense counsel, the State's contention that there was no appropriation made by law to compensate appointed indigent defense counsel is without merit.

Constitutional authority for the appointment of counsel and award of compensation
¶ 43 Even assuming that there was no appropriation of funds to compensate appointed counsel, the court was acting within constitutional authority in making these awards. The judicial function can sometimes extend beyond the determination of questions in controversy to include other functions that are necessary if the courts are to *862 carry out their constitutional mandate. Juvenile Dir., 87 Wash.2d at 242, 552 P.2d 163.
¶ 44 While separation of powers principles generally require that only the legislative entity may allocate public funds, the need for judicial independence and proper court functioning may sometimes necessitate that the courts compel funding:
While courts must limit their incursions into the legislative realm in deference to the separation of powers doctrine, separation of powers also dictates that the judiciary be able to insure its own survival when insufficient funds are provided by the other branches. To do so, courts possess inherent power, that is, authority not expressly provided for in the constitution but which is derived from the creation of a separate branch of government and which may be exercised by the branch to protect itself in the performance of its constitutional duties.
Id. at 245, 552 P.2d 163.
¶ 45 In the absence of legislative appropriation of funds, there is a high standard for the application of the court's inherent power to compel funding. Id. at 249-50, 552 P.2d 163. The court must show by clear, cogent, and convincing proof that the funds sought are reasonably necessary for the holding of court, the efficient administration of justice, or the fulfillment of constitutional duties. Id. at 250-51, 552 P.2d 163. This power can be exercised only when established methods fail or when an emergency arises. Id. at 250, 552 P.2d 163.
¶ 46 In this case, clearly an emergency situation arose when the sole contract holder for indigent defense representation resigned and was subsequently disbarred. The State does not dispute the trial court's need to take action in the absence of a public defense system. "A criminal prosecution cannot proceed if the defendant does not have counsel." State v. Howard, 106 Wash.2d 39, 44, 722 P.2d 783 (1985). Without a functioning public defense system, the court could not proceed with its criminal cases. In order to allow the court to maintain some efficiency and to hold court in criminal cases, the trial court made the necessary appointments of counsel.
¶ 47 The trial court also had a constitutional duty to appoint and compensate counsel in the absence of available public defenders. The right of indigent defendants to have counsel appointed to represent them at State expense in criminal judicial proceedings is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. See Tetro v. Tetro, 86 Wash.2d 252, 253, 544 P.2d 17 (1975). The same right to counsel in criminal cases is also guaranteed in article I, section 22 of the Washington State Constitution. These constitutional rights to counsel for those who cannot afford to pay are supplemented by statutes and court rules. See, e.g., ch. 10.101 RCW; ch. 36.26 RCW; CrR 3.1.
¶ 48 The appointment of counsel to indigent criminal defendants is a constitutional duty that the courts are charged with upholding. The State is obligated to pay court appointed counsel a reasonable amount as attorney fees in addition to reimbursement of actual expenses incurred by the court's appointment. See State v. Lehirondelle, 15 Wash.App. 502, 504, 550 P.2d 33 (1976); RCW 36.26.090. Because there is clear, cogent, and convincing proof that the appointment and compensation of appointed counsel was reasonably necessary for the holding of court, the administration of justice, and the fulfillment of constitutional duties, the trial court was acting within its inherent power to award compensation to appointed counsel.

III. Reasonableness of the Award of Attorney Fees
¶ 49 In its final allegation of error, the State contends that the trial court did not properly consider relevant factors when determining the amount of compensation to award court appointed counsel, and as a result the trial court awarded excessive fees.
¶ 50 Court appointed counsel is to be paid a reasonable amount as attorney fees in addition to reimbursement of actual expenses incurred by the court's appointment. Lehirondelle, 15 Wash.App. at 504, 550 P.2d 33. Because the trial court is in a particularly advantageous position to consider and evaluate the relevant factors in determining an *863 award of fees, the trial court's determination will generally not be disturbed absent a manifest abuse of discretion. State v. Mempa, 78 Wash.2d 530, 536, 477 P.2d 178 (1970).
¶ 51 While the obligation of attorneys to represent indigent defendants is part of established tradition, present economic circumstances may make this obligation an unreasonable burden. State v. McKenney, 20 Wash.App. 797, 804, 582 P.2d 573 (1978). The fee awarded "should strike a balance between . . . the professional obligation of a lawyer to make legal counsel available and the increasingly heavy burden on the legal profession created by expanded indigent rights." Lehirondelle, 15 Wash.App. at 504, 550 P.2d 33. Court appointed counsel should not be unjustly enriched by the court's award of fees. However, the courts must award an amount that will allow for the financial survival of his or her practice, and the county is required to pay a reasonable amount for those services when they are not donated. Id.
¶ 52 The State presented argument that the trial court should have limited its awards of reasonable compensation to $50 per hour with a maximum award of $550 per case. Awarding this flat fee would circumvent the very considerations that case law mandates that the trial court consider when determining compensation for appointed counsel. Based on concerns for the financial survival of those attorneys who are appointed by the court to represent indigent defendants, courts have rejected the use of a fee schedule or a flat rate, and instead demand that the amount of compensation should be left to the discretion of the trial court. McKenney, 20 Wash.App. at 806, 582 P.2d 573; Lehirondelle, 15 Wash.App. at 506, 550 P.2d 33.
¶ 53 Factors that the trial court should consider when determining what constitutes reasonable compensation for court appointed counsel include: the amount of time and effort expended; the nature and extent of services rendered; the fees paid for similar services in other jurisdictions; the traditional responsibilities of the legal profession; the amount of public funds made available for such purposes; and a judicious respect for both the taxpaying public as well as for the rights of the accused. Mempa, 78 Wash.2d at 536, 477 P.2d 178.

Time and effort expended and the nature and extent of services
¶ 54 The trial court clearly did give consideration to both the time that appointed counsel spent on their cases and the nature and extent of services that were provided. Before any award of fees was made, appointed counsel was required to submit a billing statement that showed time invested and specific services provided. The attorneys were told that they had to set forth their time with particularity and should also include the attorney's overhead costs.
¶ 55 Appointed counsel documented and attached their billing statements showing both time and services as part of their motions for reasonable compensation. At the hearings on compensation, the trial court frequently reduced compensation awards based on the State's challenges to the reasonableness of the time that was spent on a particular case. The record establishes that the trial court did consider the time, effort, and services that were provided by appointed counsel when calculating attorney fees.

Fees paid for similar services in other jurisdictions
¶ 56 The State argues that the trial court erred by failing to consider the fees for similar services in other jurisdictions. The only evidence the trial court appeared to have regarding compensation rates for public defenders in other counties was that given to it by the State at the May 26, 2004 compensation hearings. The court was not given a prior opportunity to examine the report's contents. However, the trial court did listen to the State's arguments regarding lower compensation rates for indigent defense in other counties.
¶ 57 According to the informal study performed by the State, the rates of payment for indigent defense services in three neighboring counties were between $40 to $75 per hour. In this case fees that appointed counsel were awarded ranged from $132 to $180 per hour.
¶ 58 However, the counties from which the State pooled its data were not facing the *864 unique emergency that existed in Grant County. Rather than one person or one office that handled the majority of the public defense work, Grant County relied on a pool of private lawyers who were conscripted to handle all of the indigent criminal defense cases. These attorneys were not themselves public defenders, but were private attorneys asked to lend their assistance to temporarily alleviate a court crippling situation as it pertained to indigent defense. The assistance was given at a risk of detriment to their own practice. Under these circumstances the public defender survey from other counties had limited relevance. The trial court instead looked to the practices of the local attorneys for the county, the normal fees, and the overhead costs of their practice. Given the unique difficulties being faced by Grant County with regard to the complete lack of a public defense system, this decision to give limited weight to the fees charged for indigent defense services in other jurisdictions was not a manifest abuse of discretion.

Traditional responsibilities of the legal profession
¶ 59 In discussing the traditional responsibilities of the legal profession, the State asserts that counsel is obligated to accept court appointments pro bono absent a specific statute to pay for indigent defense. In support of this assertion, the State directs this court to the decision in Honore v. Washington State Board of Prison Terms and Paroles, 77 Wash.2d 660, 466 P.2d 485 (1970). One of the issues in Honore was whether an attorney who is appointed to pursue an appeal in habeas corpus was entitled to compensation. 77 Wash.2d at 674, 466 P.2d 485. In deciding whether an award of compensation was mandatory for court appointed counsel, the court discussed the traditional duty of court appointed counsel to accept court appointments pro bono.
¶ 60 However, what the State fails to mention is that the court in Honore ultimately went on to hold that an attorney appointed to a habeas appeal is entitled to compensation for his or her services from public funds, and that the amount of that compensation should be fixed by the court hearing the appeal. Id. at 680, 466 P.2d 485. The court based its decision on the fact that requiring an attorney to process an appeal without compensation could undermine the quality of his or her service to the client and could also lead to the scarcity of counsel willing to accept court appointments. Id. at 679, 466 P.2d 485.
¶ 61 Honore also held that payment of compensation could only be secured through filing a claim with the State legislature. Id. at 680, 466 P.2d 485. However, this was because no statute existed that authorized the courts to award compensation for appointed counsel on habeas appeals. Id. at 677, 466 P.2d 485. In this case, RCW 36.26.090 specifically authorizes the trial court to set and award compensation and reimbursement for appointed counsel and mandates that the board of county commissioners make payment of the award to counsel. The decision in Honore does not support the conclusion that appointed counsel has an obligation to accept indigent defense appointments pro bono in every case.
¶ 62 Moreover, there is no authority for the proposition that there is a duty to accept pro bono appointments when the court appoints multiple criminal cases to a single attorney. In these consolidated cases, many of the appointed attorneys were asked to defend defendants in a number of cases. One attorney was assigned at least 14 cases. In such circumstances, asking an attorney to defend multiple criminal cases without compensation would be an onerous burden that could unduly impoverish the appointed attorneys and would likely lead to a great reduction in the number of attorneys willing to accept such appointments. The trial court did not err when it determined that appointed counsel did not have an obligation to take on all of Grant County's public defense work pro bono.

Amount of public funds available for such purposes
¶ 63 The trial court heard argument that a budget of over five hundred thousand dollars had been approved for indigent defense in Grant County. Subsequently, the trial court made a finding of fact that approximately $600,000 had been appropriated for indigent defense services. This finding indicates that the trial court did consider whether public funds existed to compensate appointed counsel. The determination that funds appropriated *865 were sufficient to pay the fees awarded was not an abuse of discretion.

Respect for both the taxpaying public as well as for the rights of the accused
¶ 64 It is apparent the trial court was concerned about the overall costs to the community for providing public defenders but it was also concerned about its obligations to provide counsel for the indigent. The solution it chose and its efforts to balance the competing interests was reasonable and not an abuse of discretion.
¶ 65 The trial court considered all of the pertinent factors when making the determinations of what was reasonable compensation. In doing so, the trial court showed appropriate concern for the financial survival of the private attorneys who were conscripted to take multiple criminal cases. The specific awards of compensation were based on an evaluation of all of these factors. Therefore, the trial court did not abuse its discretion in its awards of reasonable compensation.

IV. Attorney Fees on Appeal
¶ 66 The court appointed attorneys seek reasonable attorney fees based on the necessity of prosecuting this appeal. The State claims that there is no legal authority to award appointed counsel attorney fees since they are seeking compensation for themselves and are therefore not representing the interests of their indigent clients.[1] This assertion ignores both statutory and case law that specifically authorizes such an award.
¶ 67 RAP 18.1 permits attorney fees when authorized by applicable law. This court is authorized to award attorney fees and costs to court appointed attorneys on appeal. See, e.g., McKenney, 20 Wash.App. at 807, 582 P.2d 573; RCW 36.26.090.
¶ 68 In light of the authority that supports the award of reasonable attorney fees and costs to court appointed indigent defense counsel, we direct a commissioner of the Court of Appeals to determine costs and reasonable attorney fees on this appeal. Only those appointed attorneys who actually provided legal assistance during the course of this appeal are entitled to fees on appeal. The mere fact that the case to which they were appointed has been appealed does not entitle them to additional attorney fees.
¶ 69 In summary, the Grant County Superior Court judges did not err in refusing to recuse themselves from hearings regarding compensation of appointed counsel. In conducting these hearings they were acting within their statutory and inherent authority. We also hold that the judges did not abuse their discretion in setting the amount of the fees. Therefore, we affirm the trial court.
WE CONCUR: KATO, C.J., and SCHULTHEIS, J.
NOTES
[*] Judge Philip J. Thompson is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.
[1] It should also be noted that appointed counsel were not the parties who brought this appeal in order to secure reasonable compensation. Here, it is the State who is challenging the trial court's determination of fees as part of the underlying criminal cases.