IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) ) | No. 76964-2-I |
| A.E.T.H. (D.O.B. 02/24/2013), | ) ) | (consolidated with 77002-1-I, 77660-6-I, and 77960-5-I) |
| Minor child. | ) ) | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | |
| Respondent, | ) ) | PUBLISHED OPINION |
| v. | ) ) | FILED: August 12, 2019 |
| NYLYSHA STARVION BELAFON ARADON and CAREY ALLEN HAYES, | ) ) ) | |
| Appellants. | ) ) ) | |

SMITH, J. — The right to a fair trial before an impartial tribunal is a basic requirement of due process. Peters v. Kiff, 407 U.S. 493, 501, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972). This right to due process is especially critical in a proceeding to terminate parental rights, where so much is at stake for both the parent and the child. Here, Nylysha Aradon and Carey Hayes seek reversal of the order terminating their parental rights to their daughter, A.H. They argue that they were denied a fair trial before an impartial tribunal. We agree.

After the termination trial, and after extensive posttrial proceedings on allegations of misconduct of the Snohomish County Volunteer Guardian Ad Litem Program (VGAL Program), Judge Anita Farris recused herself from the entire

proceedings, including the termination proceeding. Judge Farris concluded that the parents were "denied their due process constitutional right to an impartial judge by having a Snohomish County Superior Judge preside over this case." Judge Farris explained that "[t]he manner in which the [VGAL Program] was operated during this case creates doubt about the Snohomish County Superior Court's ability to be impartial in this case involving court employees directly participating in the litigation." Nevertheless, Judge Farris concluded that entry of the order was a ministerial act and entered the termination order.

We hold that the parents' due process rights were violated and that entry of the order was not a ministerial act. Therefore, we reverse the termination order and we remand to a county other than Snohomish County for a new trial. We also direct the trial court to vacate the CR 59, CR 60, and sanction orders entered after Judge Farris's recusal. On remand, we direct the court to appoint an attorney and a new guardian ad litem (GAL) for A.H.

## FACTS

A.H. was born on February 24, 2013, to mother Aradon and father Hayes (parents). At birth, A.H. tested positive for methadone, and Aradon tested positive for methadone and marijuana. The parents had a verbal disagreement at the hospital, and A.H. was possibly dropped into her crib. Although A.H. was not injured, Hayes was escorted out of the hospital by security. Four days after her birth, the Department of Social and Health Services (Department) removed A.H. from her parents' custody and placed her with a foster parent with whom she has resided since her removal in 2013.

The Department filed a dependency petition in Snohomish County Superior Court (superior court) on February 28, 2013, and A.H. was found to be dependent as to both parents on May 23, 2013. According to the order of dependency, Aradon's parental deficiencies included mental health and substance abuse issues and Hayes' parental deficiencies included substance abuse and a long-term domestic violence problem. The superior court ordered the parents to engage in services and gave each parent four hours of supervised visitation per week.

During the dependency, the superior court appointed Denise Brook to serve as the volunteer guardian ad litem (VGAL). VGAL Brook was a volunteer with the VGAL Program, which is an agency of the superior court. The VGAL Program's staff members are considered court employees.

It is undisputed that VGAL Brook believed it was in A.H.'s best interests to remain permanently with the foster parent and that VGAL Brook opposed expanded visitation with the parents. During her time on the case from 2014 to 2015, VGAL Brook committed numerous breaches of confidentiality that benefited the foster parent. She disclosed previous parental terminations and the parents' criminal records to the foster parent. She also lobbied the VGAL Program to cancel parental visitations if a strict food plan, which the parties later discovered was medically unnecessary, was not followed. At the same time, she opposed giving the parents access to A.H.'s medical providers. She also tried to attend a parenting class to observe A.H. and Aradon without Aradon's knowledge after an instructor told her she could not attend for confidentiality reasons.

3

VGAL Brook died in January 2015. In February 2015, the superior court appointed Susan Walker, VGAL Brook's program coordinator and an employee of the VGAL Program, as the replacement VGAL. The declaration submitted by VGAL Walker in support of her motion replacing VGAL Brook simply states that "'Ms. Brook is no longer able to work the case.'" No one notified the superior court or the parties that VGAL Brook had died.

VGAL Walker was largely uninvolved in the case from the time of her appointment until the termination trial in August 2015. During her seven-month tenure as the VGAL, Walker contacted only one service provider for one parent, observed only one parent at one visit, and never personally spoke to the parents. And despite concerns that A.H. was allergic to certain foods, VGAL Walker never contacted A.H.'s medical providers and did not inform the parents when A.H.'s issues were resolved and her food intake no longer needed to be restricted in the same ways previously communicated.

The six-day termination trial began on August 26, 2015, before Judge Farris. Many people testified, including both parents, VGAL Walker, several social workers, and several service providers. VGAL Walker's testimony was particularly troubling, and Judge Farris found it to be "uninformed, inconsistent, dishonest, and biased." Judge Farris described seven specific instances during trial when VGAL Walker's testimony lacked candor. In one of those instances, VGAL Walker testified that she could not recall whether VGAL Brook sent the parents' criminal records to the foster parent's adoption agency. But during VGAL Walker's cross-examination, Aradon's attorney revealed an e-mail

4

obtained from the VGAL Program during discovery that referenced an attachment appearing to be criminal records. Concerned that a VGAL would illegally forward criminal records to the adoption agency, Judge Farris ordered the VGAL Program to produce the attachment, which it had not turned over as part of discovery.

The VGAL Program produced the requested attachment. The attachment revealed that VGAL Walker was the person who requested and sent the criminal records to VGAL Brook, who then illegally sent them to the foster parent's adoption agency. During a hearing on September 11, 2015, Judge Farris determined that VGAL Walker was deliberately untruthful about her knowledge of the e-mail and attachment and expressed her disappointment and shock at the behavior of the VGALs and the VGAL Program in this case. After discussing other issues of credibility and bias of the VGALs and the VGAL Program, Judge Farris decided not to give VGAL Walker's testimony any weight. In the oral ruling, Judge Farris terminated the parents' parental rights to A.H. Judge Farris also ordered the VGAL Program to "produce all documents, including emails, notes of all communications had with the foster parents and with the adoption agency." Judge Farris did not enter written findings or a written order of termination at this time.

Shortly after trial, Aradon's attorney filed a formal complaint against VGAL Walker with the superior court. In October 2015, the parents moved to remove VGAL Walker based on her misconduct. In response to this motion, Sara Di Vittorio, an attorney with the civil division of the Snohomish County Prosecutor's

Office, wrote a threatening letter on behalf of the VGAL Program to Aradon's attorneys on November 3, 2015. In that letter, Di Vittorio demanded that the attorneys "cease disclosing" confidential information about VGALs in court filings and in conversations with other members of the legal community, or the VGAL Program would "consider further legal steps." At the end of November 2015, the superior court notified Aradon's attorney that his administrative complaint against VGAL Walker was deemed unfounded but that it had prompted the superior court to reassess and clarify the VGAL Program's complaint procedure.

Around this time, Kirsten Haugen, a staff attorney for the VGAL Program who also represented VGAL Walker, met with Di Vittorio and other lawyers and administrators for the superior court and discussed the motion to remove VGAL Walker. Di Vittorio advised Haugen to oppose the parents' motion to remove VGAL Walker by filing motions to strike and redact based on CR 11 and a local confidentiality rule. Di Vittorio's assistance to Haugen, who represented a party adversarial to the parents, was not disclosed to the parents' attorneys.

Employees of the VGAL Program, and therefore employees of the superior court, also engaged in retaliation against attorneys in the same firm as Aradon's attorney. For example, they issued boilerplate objections to all discovery requests in every case involving that firm, refused to allow the firm's attorneys to enter the VGAL office without an escort, and contacted the firm's financial authority, the Office of Public Defense, as payback for the administrative complaint against VGAL Walker.

6

In December 2015, Judge Farris entered an order continuing the parents' motion to remove VGAL Walker to January 2016 to allow the parties time to gather evidence in support of a full evidentiary hearing on the parents' motion to remove VGAL Walker. Judge Farris also ordered "that the issue of whether the Court's prior termination decision can stand in light of any GAL improprieties found shall not be heard at the next hearing and shall be set for a date following the entry of final findings on the motion to remove GAL."

On January 29, 2016, Judge Farris allowed VGAL Walker to withdraw from the case without a hearing. On February 11, 2016, Judge Farris appointed Paige Buurstra, an attorney guardian ad litem (AGAL), as GAL to A.H.

Judge Farris held several evidentiary hearings in February 2016 related to the discovery issues and VGAL misconduct in the case. The parents' attorneys presented evidence that the VGALs resisted liberalized visitation for the parents, argued to impose onerous services on the parents, and engaged in abusive litigation tactics.

Judge Farris found that VGAL staff attorney Haugen proffered untruthful testimony during the hearings. For example, Haugen submitted a declaration from VGAL Walker that stated A.H.'s most current allergy testing occurred in 2014. But the most current allergy testing actually occurred in 2015 and showed that "the food list pushed by the GAL was preventing [A.H.] from eating foods she could eat, and, more importantly, was failing to warn [that A.H.] should not be fed tree nuts due to potential allergies." Haugen also argued that VGAL Brook's decision to send confidential information about A.H.'s siblings to the foster

7

parent's adoption agency was harmless because the agency had handled the adoptions of all nine of A.H.'s siblings and thus already had the information. But the adoption agency's agent later testified that it had handled only one of the sibling's adoption.

Finally, Judge Farris found that "abusive litigation tactics were used for improper purposes during these proceedings." Most notably, VGAL Brook's entire hard copy case file, which was in the VGAL Program's possession, "mysteriously disappeared without a trace or any explanation in the middle of post-trial proceedings about misconduct of that VGAL." The VGAL Program also employed "document dumps" during posttrial production to make it hard to find information, destroyed or withheld case-related e-mails, and made false or misleading statements to cover up prior misconduct.

On March 4, 2016, as a result of the VGAL misconduct that occurred and was uncovered during these evidentiary hearings, the parents filed a motion to vacate the decision to terminate their parental rights and for discovery sanctions against the VGALs and the VGAL Program. Judge Farris heard argument and testimony on this motion in late March 2016. On June 10, 2016, Judge Farris orally denied the motion. Although Judge Farris determined that there was "pervasive and egregious" misconduct by the VGALs and the VGAL Program in this case, Judge Farris found that the misconduct "did not affect the verdict and did not prevent a fair procedure."

On September 6, 2016, the parents filed a new motion for sanctions against the VGAL Program, Haugen, and Snohomish County Superior Court

8

Administration requesting substantial sanctions for each discovery violation and false fact presented since October 2015. The superior court, on behalf of the VGAL Program, opposed the motion, arguing that it was not a party to the termination and that Judge Farris could not impose sanctions against the superior court. Judge Farris held a hearing on the sanctions motion on September 23, 2016. During this hearing, Di Vittorio represented both the VGAL Program and the superior court.

On October 28, 2016, the superior court moved for Judge Farris to recuse herself from the sanctions portion of the proceeding, strenuously arguing that as a member of the superior court, Judge Farris had a conflict of interest in hearing the motion for sanctions. On November 18, 2016, Judge Farris held a hearing on the recusal motion and decided she needed to recuse. In a subsequent hearing on February 17, 2017, Judge Farris heard argument as to whether it was still possible to enter a final written order on termination, which had been prepared for her signature.

On May 17, 2017, Judge Farris entered an "Order Regarding Entry of Trial Findings and Order on Recusal" (recusal order) and recused herself from the entire proceeding, including the termination trial. Judge Farris also entered a written termination order. Judge Farris did not rule on the parents' outstanding sanctions motion. After her recusal, Judge Farris entered a 317-page memorandum decision explaining in great detail her reasons for recusing. Below is the table of contents from that memorandum decision:

## I. THE WAY THE VGAL PROGRAM WAS OPERATED DENIED THE PARTIES THE DUE PROCESS RIGHT TO AN IMPARTIAL JUDGE. . . .

A. Judicial conflicts were created by the following: using court employees as parties, lawyers and witnesses with no ethical boundaries or firewalls in place; allowing the court (VGAL Program) to enter into the case as a litigant and be represented by a lawyer; using one lawyer to simultaneously represent the GAL party and the Superior Court; and using the same lawyer that represented the Superior Court and its judges to also represent and assist the GAL's lawyer in litigating this case against the parents. . . .

B. Snohomish County Superior Court asserted a Snohomish County Judge cannot rule on matters involving the VGAL Program or its employees because the VGAL Program is the Superior Court, the acts of VGAL Program employees are the acts of the Superior Court, and judging or sanctioning the acts of VGAL Program employees is the Judge judging or sanctioning himself or herself. . . .

C. If the VGAL Program/Superior Court's assertion that all acts of VGAL employees are acts of the Superior Court is true, there is an appearance the Snohomish County Superior Court acted as judge, party, lawyer and witness in this one case. . . .

D. If Snohomish County Superior Court Judges are disqualified from hearing a motion seeking sanctions against a VGAL Program attorney because sanctions that impact the VGAL Program impact the Superior Court, then they are also disqualified from hearing other matters that impact the VGAL Program. . . .

E. There is no factual, logical or legal reason the grounds for disqualification apply only to the Motion for Sanctions. . . .

F. Recusal is constitutionally required to maintain the right to an impartial judge because there was no ethical boundary protocol or firewall to separate the Superior Court and its Judges from the VGAL Program in this pending litigation. . . .

G. The VGAL Program claims the way it is structured creates a system where the only way opposing parties can obtain protection from VGAL attorneys engaging in abusive litigation tactics is by litigating against the Superior Court; if that is true, opposing parties are denied equal rights to protection from abusive litigation tactics. . . .

10

## II. RECUSAL IS NECESSARY BECAUSE THERE IS AN APPEARANCE THE SNOHOMISH COUNTY SUPERIOR COURT ALIGNED WITH AND ASSISTED THE GALS' ATTORNEY IN LITIGATING THIS CASE AGAINST THE PARENTS . . . .

A. There is an appearance the Snohomish County Superior Court specifically directed the GAL's attorney to impede discovery requests from the mother's attorneys. . . .

B. The Superior Court granted ex parte court orders allowing the Superior Court Program to enter into this case as a party separate from the GAL, permitted a lawyer representing the Superior Court's interests to appear and argue the Superior Court's interests to the Court, and permitted the same lawyer representing the Court's interests to simultaneously represent the GAL. . . .

C. The Snohomish County Superior Court threatened to take legal action against the mother's attorneys personally for filing evidence in this case and to prevent them from filing additional similar evidence. . . .

D. The Superior Court assisted the GAL's attorney in filing Motions to Strike and Redact some of the opposing parents' pleadings and evidence. . . .

E. Employees of the Superior Court appeared to try to influence or pressure the parents' attorneys by threatening and retaliating against the parents' attorneys. . . .

F. The appearance that the Superior Court was responsible for withholding, losing or destroying evidence of GAL misconduct raises doubt as to the Court's impartiality. . . .

G. The Superior Court bench became directly involved in the Attorney Fees and Sanctions Motion that was part of a CR 59/60 Motion. . . .

## III. RECUSAL IS NECESSARY BECAUSE THERE IS AN APPEARANCE THE SNOHOMISH COUNTY SUPERIOR COURT ATTEMPTED TO IMPROPERLY INFLUENCE OR PRESSURE THE TRIAL JUDGE. . . .

A. The VGAL Program/Superior Court brought a last minute request to have this trial judge summarily rule in its favor in a

11

manner that appeared to attempt to improperly exploit its connection to the court to influence or pressure the trial judge. . . .

B. There is an appearance a Snohomish County Superior Court employee tried to improperly influence or pressure the trial judge via ex parte contact by anonymously placing a memorandum addressing judicial disqualification in the judge's mailbox. . . .

C. There is an appearance prior attempts by the GAL's attorney to improperly influence or pressure the trial judge were acts legally attributable to the Superior Court. . . .

**IV. EVERYONE IN THIS CASE AGREED THE CONVERSATION WITH THE PRESIDING JUDGE COULD NOT FORM ANY LEGAL BASIS FOR JUDICIAL DISQUALIFICATION . . . .**

**V. RECUSAL IS NECESSARY ON THE MOTION AGAINST VGAL ATTORNEY HAUGEN BECAUSE FINDINGS WERE MADE WITHOUT SERVICE ON HER AND BECAUSE THE INTERRELATIONSHIP BETWEEN THE VGAL PROGRAM LAWYER AND THE VGAL PROGRAM REQUIRES THAT THE MOTIONS AGAINST THEM BE HEARD TOGETHER. . . .**

In summary, Judge Farris concluded the memorandum decision by stating:

This memorandum decision is set forth to make the reasons the Motion to Recuse is being granted clear. I find and conclude herein only that at this time the facts, evidence and arguments set forth above create an appearance the parties in this case cannot obtain an impartial proceeding in Snohomish County Superior Court.

On May 31, 2017, the mother filed a CR 60 motion to vacate the termination order and a CR 59 motion for a new trial based on the VGAL Program's misconduct and its relationship with the superior court. On June 5, 2017, the father joined in the mother's motions. On June 13, 2017, the governor appointed Judge T.W. Small of Chelan County Superior Court to preside over the case. In July 2017, Aradon filed an additional CR 60 motion to vacate, arguing that relief from judgment was necessary because the VGAL Program either lost

12

or destroyed necessary evidence. After an October 6, 2017, hearing in Snohomish County, Judge Small denied the CR 59 and CR 60 motions and the motion for sanctions. The parents appeal.

## ANALYSIS

### *Due Process and Appearance of Fairness*

The parents argue that the superior court violated both the appearance of fairness doctrine and their due process right to a proceeding free from bias in this proceeding. Because the dependency, the termination trial, and the subsequent proceedings occurred in a biased tribunal where the superior court assisted and advocated against the parents, we agree and reverse the termination order. We also direct the trial court to vacate the orders entered by Judge Small—the order denying the CR 59 and CR 60 motions and the sanctions order—and remand for a new trial to a county other than Snohomish County.

"'A fair trial in a fair tribunal is a basic requirement of due process.'" Peters v. Kiff, 407 U.S. 493, 501, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972) (quoting In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)). "Due process requires a competent and impartial tribunal." Peters, 407 U.S. at 501. "Moreover, even if there is no showing of actual bias in the tribunal, . . . due process is denied by circumstances that create the likelihood or the appearance of bias." Peters, 407 U.S. at 502.

Similarly, under the appearance of fairness doctrine, "a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." State v. Solis-Diaz, 187

13

Wn.2d 535, 540, 387 P.3d 703 (2017). "The law requires more than an impartial judge; it requires that the judge also appear to be impartial." Solis-Diaz, 187 Wn.2d at 540. "The party asserting a violation of the appearance of fairness must show a judge's actual or potential bias." Solis-Diaz, 187 Wn.2d at 540. "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts." Solis-Diaz, 187 Wn.2d at 540.

Here, Judge Farris displayed no personal bias and attempted to conduct an unbiased proceeding. But the sticky wicket is that the tribunal in which A.H.'s dependency and termination proceedings took place was biased because of the involvement of superior court employees working against the parents in this case. "[U]nchallenged findings are verities on appeal." In re Dependency of M.S.R., 174 Wn.2d 1, 9, 271 P.3d 234 (2012). And Judge Farris entered many unchallenged findings of fact in her recusal order and memorandum decision, which was incorporated by reference in the recusal order. For example, Judge Farris found that before the termination trial, "the mother's attorneys and the GAL's attorney[, Kirsten Haugen,] got in a global discovery dispute" and "[t]he GAL attorney then had private meetings about the discovery dispute with the Head Superior Court Administrator and the Civil Division attorneys representing the Superior Court and Judges." The head administrator instructed Haugen to apply the following procedures to any discovery requests by Aradon's attorney:

> blanket object to every discovery request; refuse to produce any discovery ever unless a discovery conference is first conducted at the VGAL Offices; refuse to produce any discovery unless opposing counsel come to the VGAL Offices and read the discovery in the

offices first and identify page by page the discovery requested; and avoid the requirement to provide free discovery to indigent parents by charging the court appointed attorneys personally for each page of discovery rather than charging the indigent clients.

"When the parents' attorneys complained, the GAL's attorney advised them that this 'discovery procedure' was not being imposed by the GAL's lawyer, but had been dictated to the GAL attorney by the Head Superior Court Administrator and the Superior Court's lawyers on behalf of the VGAL Program, i.e., the Superior Court." Judge Farris explained that these "discovery impediments" had an effect on A.H.'s termination trial because they

remained in place during about the first two years of this dependency case when the GAL in the case was engaging in significant misconduct that was only much later discovered. That GAL misconduct was not discovered when it was occurring because GAL discovery was not being exchanged due to this "discovery procedure."

Additionally, Judge Farris found that after the termination trial and during the subsequent litigation on VGAL misconduct, Di Vittorio met with Haugen and "advised and directed [Haugen] to make motions to strike and redact the parent's pleadings in this case" and gave "directions on what to include in the motions and advice on the meaning of applicable law." Di Vittorio also "sent the mother's attorneys a letter threatening to take legal action against them personally for filing certain evidence in this case," which "essentially threatened to take some legal action against the mother's attorneys if they did not capitulate and allow certain pleadings to be stricken or redacted as was being requested" by Haugen. These actions call the superior court's impartiality into doubt because "the Superior Court's attorneys, as part of their representation of the Superior Court and its

15

judges, threatened to take legal action against a litigant for filing evidence in a termination case when the case was pending before a judge of that same court."

Judge Farris also found that Di Vittorio also created an appearance of fairness issue when Di Vittorio repeatedly referred to the superior court and the VGAL Program collectively as "the Court" in response to Aradon's motion for sanctions. At the September 2016 hearing on sanctions, Di Vittorio identified herself as being present "on behalf of the Snohomish County Superior Court." Di Vittorio's representation that she was there on behalf of "the Court" and the VGAL Program objectively created bias within the proceedings.

Furthermore Judge Farris explained that during the November 4, 2016, hearing on the recusal motion, Di Vittorio brought "two other Superior Court Judges, including the Presiding Judge, to the courtroom for the hearing to sit directly behind [Di Vittorio]." In addition to creating an appearance of "improper influence or pressure" on Judge Farris, this action "also created an appearance of an attempt to try and intimidate or pressure the parents' attorneys." The presence of these judges "gave the appearance of trying to send home a message to defense counsel that Superior Court Judges were personally involved in opposing their motion and personally siding against them with the VGAL Program staff attorney who had clearly committed courtroom misconduct."

Finally, Judge Farris found that the VGAL Program used abusive litigation tactics against the parents. These included posttrial "document dumps" that purposefully made information hard to find, the destruction or withholding of relevant e-mails, and the proffering of false and misleading statements. Perhaps

most egregiously, VGAL Brook's entire hard copy file for this dependency mysteriously "disappeared" from the VGAL Program's possession during the posttrial proceedings regarding the VGALs' misconduct.

In short, based on the above findings, Judge Farris correctly concluded that "[t]he Superior Court, its direct agents, and its own attorneys, all under the supervision of the judges repeatedly aligned with and literally became a party litigating this case against the parents . . . throughout the case." These circumstances, which existed before, during, and after the termination trial, resulted in a tribunal that was biased and violated both parents' right to due process and the appearance of fairness doctrine. Therefore, the termination order must be reversed. Although Judge Small was not a judge seated in Snohomish County, he heard oral argument on the motions in Snohomish County and relied on a record generated in that biased tribunal in making his decisions. For that reason, the orders entered by Judge Small do not escape the taint of the bias and must be vacated.

The Department argues that the termination order can stand. It contends that because the superior court's involvement in litigating against the parents occurred only during the September 2016 sanctions proceedings, the appearance of fairness doctrine and the parents' due process right to an impartial tribunal were not violated during the termination trial. But that contention ignores the fact that superior court attorneys assisted the VGAL Program in litigation against the parents during discovery and during the motions regarding the VGALs' misconduct. Because the record establishes the superior court's

17

attorneys were involved in this litigation well before the sanctions motion, the Department's argument fails.

The Department also argues that State v. Perala, 132 Wn. App. 98, 130 P.3d 852 (2006), is instructive. In that case, Grant County Superior Court judges met to establish a presumptive rate of pay for appointed criminal defenders. Perala, 132 Wn. App. at 113. The actual rate of pay for each criminal defender on a particular case was then determined by the trial judge after a hearing. Perala, 132 Wn. App. at 110. The State filed motions for recusal, arguing that the judges' policy establishing the presumptive rate of pay prejudiced the State's ability to argue that lower amounts were suitable in the subsequent, case-specific hearings. Perala, 132 Wn. App. at 109-110. The trial court denied these motions. Perala, 132 Wn. App. at 110. The Court of Appeals affirmed, holding that the appearance of fairness was not violated because the State did not "provide any evidence that demonstrate[d] that the trial court was unwilling to fairly consider the State's requests for reduced compensation." Perala, 132 Wn. App. at 114.

Here, in contrast to Perala, there was evidence of the superior court's bias. Before, during, and after the termination trial, attorneys representing the superior court aided the VGAL program in litigating against the parents. Indeed, the bias evidenced here was such that although Judge Farris herself did not participate in the superior court's improper acts or show any personal bias, Judge Farris determined that she was precluded from taking further action in the case. Therefore, Perala is not persuasive.

Because reversal is required, we need not reach many of the alternative grounds for reversal raised by the parents. But we address the following arguments because they are either relevant to our instructions on remand or likely to be raised again on remand.

## Recusal

The parents argue that reversal is also necessary because it was improper for Judge Farris to enter a termination order after she determined that she must recuse from the case. Although Judge Farris properly decided to recuse herself under these facts, we conclude that Judge Farris erred in determining that entering the termination order was a ministerial act.

Where a judge has recused, this court has adopted "a bright line rule" regarding any subsequent actions: "once a judge has recused, the judge should take no other action in the case except for the necessary ministerial acts to have the case transferred to another judge." Skagit County v. Waldal, 163 Wn. App. 284, 288, 261 P.3d 164 (2011).

Here, on November 18, 2016, after hearing argument from all parties regarding the VGAL Program's recusal motion, Judge Farris orally announced her recusal. Judge Farris based this determination, in part, on the fact that superior court attorneys communicated with, aligned with, and assisted the VGAL's attorney in the litigation in this case. In February 2017, Judge Farris heard argument from the parties on whether a termination order could still be entered given her recusal. Unsurprisingly, Di Vittorio and the Department argued

that Judge Farris could enter the order, and the parents and AGAL Buurstra argued that Judge Farris could not.

On May 17, 2017, Judge Farris entered the recusal order. The same day, Judge Farris also entered the termination order. In the recusal order, Judge Farris concluded that entry of the termination order was merely a ministerial act:

> entry of the Findings of Fact, Conclusions of Law and Final Order of Termination from the termination trial is a ministerial act under the unique facts of this case that are set forth below. Therefore, final paperwork can enter and it has been signed and is hereby entering contemporaneously with this order.

Judge Farris acknowledged that "[n]ormally signing findings is not a ministerial act." But Judge Farris concluded that it was ministerial in this case because the findings conformed to her prior oral rulings and had already been drafted and signed by the parties:

> [A]ny disputes over the form of the findings and order had already been decided by me, I had very specifically directed the parties exactly how to prepare the findings, and had literally dictated them to a court reporter verbatim. The parties had all already agreed the written findings complied with my order on how to word the final paperwork as shown by their signatures on those findings which signatures were all affixed before the recusal issue was raised or recognized.

But Waldal does not allow a trial judge who has recused herself to perform just *any* ministerial act. The bright-line rule allows only "necessary ministerial acts *to have the case transferred to another judge*." Waldal, 163 Wn. App. at 288 (emphasis added). The entry of the termination order was not necessary to have the case transferred to another judge. Therefore, under Waldal, Judge Farris erred by entering the termination order after her oral recusal and the termination order must be reversed.

20

The Department argues that Judge Farris's signature and entry of the final order on termination required no exercise of discretion and therefore qualified as a "ministerial act" under Waldal. Waldal, 163 Wn. App. at 288. We do not read the bright-light rule in Waldal so broadly. And even if Waldal does allow a recused judge to perform a ministerial act unrelated to transfer, the entry of the final order in this case was not ministerial because it required the exercise of discretion. Regardless of whether the written order conformed to Judge Farris's prior oral rulings or whether the parties had already signed the order, Judge Farris retained discretion to modify that order up until it was signed and entered:

> An expressed intention to perform a future act is not the same as performing the act itself. Until final judgment is entered, the trial judge is not bound by a prior expressed intention to rule in a certain manner.

DGHI, Enters. v. Pac. Cities, Inc., 137 Wn.2d 933, 944, 977 P.2d 1231 (1999). Furthermore,

> a trial judge's oral decision is no more than a verbal expression of his informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment.

Ferree v. Doric Co., 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963). For these reasons, Judge Farris retained and exercised her discretion in abiding by her prior oral rulings and entering the termination order. Entry of the order was not a ministerial act.

The Department also relies on State v. Ward, 182 Wn. App. 574, 330 P.3d 203 (2014), for the proposition that judicial action that relies on an oral ruling is ministerial. In that case, the defendant prepared an order with findings and

21

conclusions related to an earlier suppression hearing. A judge other than the judge who heard the motion signed the order. Ward, 182 Wn. App. at 583. Normally, only the judge who hears the evidence has the authority to enter findings of fact on that evidence. Ward, 182 Wn. App. at 584. But because the defendant failed to object to the entry of the order by a different judge, the Court of Appeals held that he waived the issue on appeal. Ward, 182 Wn. App. at 586-87. The Court of Appeals described the signing of the findings by a different judge as a "ministerial act" because the findings were consistent with the original judge's oral ruling. Ward, 182 Wn. App. at 586. But Ward did not involve recusal or address whether signing an order is a ministerial act necessary to have the case transferred to another judge under Waldal. Therefore, it is not persuasive.

Finally, the Department argues that other states allow the entry of findings of facts and conclusions of law after recusal where the findings and conclusions are consistent with a prior oral ruling. Fischer v. Knuck, 497 So. 2d 240, 243 (Fla. 1986); In re Tr. by Crawford, 20 Neb. App. 502, 826 N.W.2d 284, 291 (2013); Plaza v. Plaza, 21 So. 3d 181, 182 (Fla. Dist. Ct. App. 2009). Given the bright-line rule established in Washington under Waldal, we are not persuaded by this nonbinding out-of-state authority. Reversal is required.

### Appointment of Attorney for A.H.

The parents argue that A.H.'s right to due process was violated because the trial court's decision to strike VGAL Walker's testimony left A.H. with no one to protect her interests at trial. Because we have already determined that reversal is necessary based on the due process violations, we need not reach

22

this argument. But we direct the trial court on remand to appoint a GAL in addition to an attorney to represent A.H.'s interests.

On remand, in accordance with RCW 13.34.100(1), the trial court must appoint a GAL to represent A.H. This GAL cannot be a GAL associated with the VGAL Program. AGAL Buurstra, would be a suitable choice, if she is able to serve.

Additionally, given the history of this case, we direct the trial court on remand to appoint an attorney to represent A.H.

The Supreme Court has held that "children have fundamental liberty interests at stake in termination of parental rights proceedings." M.S.R., 174 Wn.2d at 20. Although children do not have a blanket right to counsel in termination proceedings, the law requires that "a GAL must be appointed unless 'for good cause' shown the judge concludes it is not necessary." M.S.R., 174 Wn.2d at 19-20 (quoting RCW 13.34.100(1)). Additionally, RCW 13.34.100(7)(a) states that "[t]he court may appoint an attorney to represent the child's position in any dependency action on its own initiative, or upon the request of a parent, the child, a guardian ad litem, a caregiver, or the department." "In determining whether counsel is required, courts are to apply the Mathews factors on a case-by-case basis, taking into account the specific interests at risk in each instance, the additional decisional accuracy that would be afforded by appointing an attorney, and the government's interest in not appointing counsel." In re Dependency of E.H., 191 Wn.2d 872, 894, 427 P.3d 587 (2018) (citing Mathews

v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). Under

Mathews, due process requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335. In dependency cases,

> courts should consider at least the age of the child, whether the child is in legal or physical custody of the State, whether the child's stated interests are aligned with the GAL's assessment of the child's best interest (if a GAL has been appointed) or with another represented party's desires, whether the child disputes the facts that form a basis for the dependency determination, whether the child presents a complex argument against the State's proposed action, and the issues that are actually disputed or to be addressed in the hearing.

E.H., 191 Wn.2d at 894. Whether a child is entitled to an attorney under the

Mathews test is a mixed question of law and fact. E.H., 191 Wn.2d at 894-95.

Here, each of the Matthews factors favors the appointment of an attorney

for A.H. First, A.H. has strong private interests that will be affected on remand:

she has the right to be free from unreasonable risks of harm; a right to

reasonable safety; and the right to basic nurturing, including a stable, safe, and

permanent home. M.S.R., 174 Wn.2d at 17. A.H. faces not only the risk of

losing her parents but also of losing relationships with siblings, grandparents,

aunts, uncles, and other family members. M.S.R., 174 Wn.2d at 15. She also

faces the risk of losing her foster parent and the stability and relationships she

has developed while living with her foster parent all but four days of her young life.

Second, the risk of erroneous deprivation is high and thus favors appointing an attorney for A.H. M.S.R., 174 Wn.2d at 18. Given the evidence of misconduct on the part of the VGALs and the VGAL Program in this case and the bias evidenced during the proceedings in the superior court, this termination case is factually and legally unique. No other party adequately represents the interests of A.H. in this proceeding because no one's interests are directly aligned with hers. A.H. is now six years old and has lived with the same foster parent since she was a few days old; her interests are not the same as those of her parents or the Department. And while a GAL would represent what he or she believes are the best interest of A.H., it is not the GAL's role to "protect the legal rights of the child." M.S.R., 174 Wn.2d at 21. An attorney will do that and more, including maintaining confidential communications, giving legal advice bound by an ethical duty to A.H., explaining A.H.'s rights to her, facilitating and expediting the resolution of this proceeding, and effectuating the court's orders. M.S.R., 174 Wn.2d at 21. Additionally, A.H. may now be able to communicate her interests to an attorney in a way that was not possible during the first trial when she was only two years old.

Finally, the Department does not have a strong interest in denying representation to A.H. While the Department does have a strong interest in reducing the fiscal costs of the proceeding, the costs and procedural burden of appointing an attorney to represent A.H. do not outweigh A.H.'s interests.

25

Furthermore, the Department's other interests, such as the welfare of A.H. and obtaining an accurate and just decision, weigh in favor of appointing an attorney for A.H. M.S.R., 174 Wn.2d at 18.

Here, an attorney will provide guidance that is long overdue in a case that has languished for years in the superior court and now on appeal. For these reasons, we direct that an attorney be appointed for A.H. on remand.

We also note that RCW 13.34.100(1) requires a trial court to appoint a GAL and states that the requirement is "deemed satisfied if the child is represented by an independent attorney in the proceedings." Therefore, in addition to the appointment of a GAL, the appointment of an attorney to represent A.H. on remand will also ensure the requirements of RCW 13.34.100(1) are satisfied.

### Challenge to GAL Best Interests Statute

Hayes argues that the "best interests" standard in RCW 13.34.105(1)(e) and (f) violates due process because it is overly vague and thus permits GALs to pursue their implicit biases in determining what is best for a child. We disagree.

"In any vagueness challenge, the first step is to determine if the statute in question is to be examined as applied to the particular case or to be reviewed on its face." City of Spokane v. Douglass, 115 Wn.2d 171, 181-82, 795 P.2d 693 (1990). A vagueness challenge to a statute that does not involve First Amendment rights must be decided as applied to the particular facts of a case. In re Welfare of H.S., 94 Wn. App. 511, 524-25, 973 P.2d 474 (1999). Where a vagueness challenge to a statute does not involve First Amendment interests, a

facial challenge to the statute will not be considered. <u>Douglass</u>, 115 Wn.2d at 182.

RCW 13.34.105(1) outlines the duties of a GAL. Sections (e) and (f) include references to the "best interests of the child" and state:

> (e) Court-appointed special advocates and guardians ad litem may make recommendations based upon an independent investigation regarding *the best interests of the child*, which the court may consider and weigh in conjunction with the recommendations of all of the parties;
> (f) To represent and be an advocate for *the best interests of the child*.

RCW 13.34.105(1) (emphasis added). This statute does not involve the First Amendment. Therefore, only an as-applied challenge may be considered. Statutes are presumed constitutional, and "the challenger of a statute must prove beyond a reasonable doubt that the statute is unconstitutional." <u>In re Welfare of A.W.</u>, 182 Wn.2d 689, 701, 344 P.3d 1186 (2015).

The "best interests of the child" is not defined in chapter 13.34 RCW. <u>See</u> RCW 13.34.030. But the Washington Supreme Court has considered this phrase generally and concluded that "[w]ere the legislature to define the terms in question more precisely than it has already done, the result might well be an inflexibility that deterred rather than promoted the pursuit of the child's best interests." <u>In re Welfare of Aschauer</u>, 93 Wn.2d 689, 697-98 n.5, 611 P.2d 1245 (1980). And because every parental termination proceeding presents its own "peculiar facts and circumstances," criteria for establishing the best interests of the child are "necessarily absent." <u>Aschauer</u>, 93 Wn.2d at 697-98 n.5.

27

Here, Hayes' as-applied challenge to RCW 13.34.105(1) rests on the argument that VGAL Brook's actions throughout the dependency, which reflected her opinion that it was in the best interest of A.H., who is black, to be adopted by her foster mother, who is white, were unconstitutionally affected by her implicit racial biases. As the Supreme Court has recognized,

> racism itself has changed. It is now socially unacceptable to be overtly racist. Yet we all live our lives with stereotypes that are ingrained and often unconscious, implicit biases that endure despite our best efforts to eliminate them. Racism now lives not in the open but beneath the surface—in our institutions and our subconscious thought processes—because we suppress it and because we create it anew through cognitive processes that have nothing to do with racial animus.

State v. Saintcalle, 178 Wn.2d 34, 46, 309 P.3d 326 (2013) (footnote omitted) abrogated on other grounds by City of Seattle v. Erickson, 188 Wn.2d 721, 398 P.3d 1124 (2017).

Hayes cannot show that the term "best interests of the child" in RCW 13.34.105(1) is unconstitutionally vague as applied to this case. VGAL Brook was not responsible for making a final and binding determination as to what was in A.H.'s best interests. VGAL Brooke's role was to report recommendations and information to the trial court. Only the trial court is tasked with deciding what is in a child's best interests. RCW 13.34.190(1) ("[T]he court may enter an order terminating all parental rights to a child only if the court finds that . . . (b) [s]uch an order is in the best interests of the child."). Because VGAL Brook did not make the final determination about what was in A.H.'s best interests, there is no risk of "arbitrary enforcement" of her opinion. See State v. Irwin, 191 Wn. App. 644, 655, 364 P.3d 830 (2015) (holding that a community custody condition was

unconstitutionally vague where the community custody officer's discretion would result in "arbitrary enforcement"). Hayes has not met his burden to show that RCW 13.34.105(1) is unconstitutional as applied here.

For the reasons discussed, we reverse the termination order and direct the trial court to vacate the CR 59 and 60 order and the sanctions order. We remand for a new trial in a county other than Snohomish County. We order that the retrial be set initially in King County Superior Court as Aradon's attorney indicated that King County, an adjoining county, would be a convenient forum. Thereafter, any party—should they choose to do so—may file a motion to change venue to any county other than Snohomish County and may renew the motion for sanctions. On remand, the trial court is directed to vacate the termination order, the CR 59 and 60 order, and the sanctions order and appoint both a GAL and an attorney for A.H.

_____
Smith, J.

WE CONCUR:

_____
Dwyer, J.

_____
Pelireella, J.

29