IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

NATHAN JOVEE,

                Appellant,

    v.

BRANDON HUBER,

                Respondent.

No. 83915-2-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Nathan Jovee petitioned for a Domestic Violence Protection Order (DVPO) for his minor children. A superior court commissioner denied the petition after previously recusing himself from the matter. But a judicial officer who has recused from a matter should take no other action in the case except for the necessary ministerial acts to have the case transferred to another judicial officer. Skagit County v. Waldal, 163 Wn. App. 284, 287-88, 261 P.3d 164 (2011). We vacate the appealed order and remand for reconsideration of the petition before another judicial officer.

FACTS

On February 2, 2022, Nathan Jovee, on behalf of his three minor children, petitioned for a DVPO against Brandon Huber. Huber is the fiancé of Jovee's ex-wife. A superior court granted a temporary DVPO at a hearing where Jovee appeared pro se and Huber did not appear. The matter was set for a hearing on February 16. Huber entered responsive filings on February 14. At all times below and on appeal, the parties

have represented themselves.

On February 16, the matter was set before a commissioner who recused himself.[1]  A commissioner pro tem reissued the temporary DVPO and continued the hearing to February 23.  On February 23, both parties appeared pro se.  Jovee's ex-wife also appeared.  Another pro tem commissioner granted Jovee's request for a continuance because he had not been served with a declaration.  The matter was continued to March 9 and the temporary DVPO was reissued.

The March 9 hearing was again scheduled before the commissioner who had previously recused himself.  The commissioner determined, over Jovee's objection, that he no longer needed to recuse.  The hearing began with the commissioner asking Jovee if it was correct that Jovee had named the commissioner as a defendant in an action in a different county.  Jovee confirmed and said the action was in federal district court.  The following exchange then took place:

> THE COURT: And it's my understanding that that matter is set at this point for a dismissal. You—you were seeking a voluntary dismissal in that case; is that correct?
>
> MR. JOVEE: No. The—that's incorrect. The County didn't want me to voluntarily dismiss you and they kept you in.  You've already actually recused yourself in this matter.
>
> THE COURT: Yes, but you had filed a motion to voluntarily dismiss that action. Is that my understanding?
>
> MR. JOVEE: Yes, I did file it, but this county—but the County . . . objected, and they denied that motion. So, there is no motion to dismiss you out of the claim.
>
> THE COURT: Okay. Well, it's my understanding that there was a voluntary dismissal that was filed, but apparently there's a motion to dismiss that was filed as well. Is that— is that what you're telling me?

---

[1] The verbatim report of proceedings from the February 16 hearing is not in the record before us.

MR. JOVEE: No, I'm not. I'm really confused—

The commissioner said, "I don't believe that there exists anymore a reason for this Court to be recused from the matter." Jovee objected and pointed out that the commissioner had already recused himself on the record. The court said,

> I understand. I also understand that there was a voluntary dismissal that was filed. I don't believe that the Court cannot be fair and impartial to either party in this case. I haven't reviewed the materials, but I am going to set a hearing on my calendar for purposes of hearing this case. And your objection would be noted, Mr. Jovee.

At the subsequent hearing on March 17, Jovee stated, "I continue to object to you hearing this as I am suing you in Federal Court." The commissioner noted the objection and after discussion regarding lack of service continued the matter one day because Jovee had not received two supplemental declarations. The next day, the commissioner entered an order denying the petition for a DVPO. The court found that Jovee had not met the necessary burden of proof to establish that Huber had engaged in domestic violence. Jovee appeals the commissioner's March 18 order.

DISCUSSION

The appellant argues that the continued entry of orders by the commissioner after his recusal creates the very "appearance of un-fairness" that the court attempted to avoid.

"'A fair trial in a fair tribunal is a basic requirement of due process.'" In re Dependency of A.E.T.H., 9 Wn. App. 2d 502, 517, 446 P.3d 667 (2019) (quoting Peters v. Kiff, 407 U.S. 493, 501, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972)). "Due Process requires a competent and impartial tribunal." Peters, 407 U.S. at 501. "Moreover, even if there is no showing of actual bias in the tribunal, . . . due process is denied by

3

circumstances that create the likelihood or the appearance of bias." Id. at 502. "Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing." In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). Judicial officers must recuse themselves from a case if they are biased against a party or if their impartiality may reasonably be questioned. Id.

Until Waldal, there had been "no Washington authority" on the question of what actions a judge may or may not take after their recusal. 163 Wn. App. at 287. A panel of this court followed the example of federal and other state courts of appeal in "adopting a bright line rule: once a judge has recused, the judge should take no other action in the case except for the necessary ministerial acts to have the case transferred to another judge." Id. at 288; see also Payton v. State, 937 So. 2d 462, 465 (Miss. Ct. App. 2006) (adopting the federal rule and listing other states following same or similar rule). This bright line rule, where it has been adopted, strongly indicates a finality to recusals: judges may not reconsider or revoke their decision once they have recused. See, e.g., Doddy v. Oxy USA, Inc., 101 F.3d 448, 457 (5th Cir. 1996), El Fenix de Puerto Rico v. M/Y JOHANNY, 36 F.3d 136, 142 (1st Cir. 1994). In subsequent caselaw, we have applied the bright line rule of Waldal to revoke any signed findings or orders entered by a judge on a case on the same day they recused themselves from that case, reasoning that *any* ministerial act or order not directly in the service of transferring the case to another judge is error. A.E.T.H., 9 Wn. App. 2d at 523.

Huber responds[2] by summarily stating that on March 9, 2022, the case Jovee filed against the commissioners and judges in Snohomish County Superior Court had ended and the commissioner who had previously recused was excused from the suit. Huber asserts, without citing any supporting authority, that the commissioner could therefore hear the case.

As was the case in Waldal, "[w]hether recusal was necessary[3] in this case is not the issue before us. The fact is, the [commissioner] did recuse." 163 Wn. App. at 287. From that point forward, "any rulings by that judge in that case will appear to a disinterested person as being potentially tainted by bias no matter which way the rulings go." Id. at 288. We conclude that the commissioner improperly entered orders in this matter after he had previously recused himself.

## Attorney Fees

Jovee seeks "reasonable and equitable lost wages, costs and fees" associated with bringing forth this appeal, citing RAP 18.1.

---

[2] Huber initially responded to Jovee's opening brief by filing a "Declaration in response to Appeal" in which he claimed that electronic service upon him had been improper. Out of an abundance of caution, in two separate rulings this court 1) directed Jovee to cure service defects and 2) gave Huber additional time to respond. A commissioner of this court determined in a notation ruling that because this court provided a paper copy of Jovee's opening brief to Huber and Jovee has now filed proof of service on Huber of paper copies of his opening brief and his notice of appeal, Huber has been given actual notice of the proceedings and any objection by Huber under RAP 5.4(b) is moot. This court permitted Huber to file a response brief by or before January 11, 2024. Huber ultimately filed a "Declaration in Response to Multiple Filings by Nathan Jovee" on January 11, which we treat as Huber's Brief of Respondent. See RAP 10.2(b); RAP 10.3(b).

[3] The act of filing a lawsuit against judicial officers does not necessarily give rise to a duty to recuse. See In re Disciplinary Proceeding Against King, 168 Wn.2d 888, 905, 232 P.3d 1095 (2010) (concluding that the relief sought in the alleged conflicting law suit indicated no meritorious reason for adding the disciplinary hearing officer as a party to that suit and that "[o]ne cannot manufacture an appearance of unfairness by merely filing a lawsuit against the presiding official"); United States v. Pryor, 960 F.2d 1, 3 (1st Cir.1992) ("It cannot be that an automatic recusal can be obtained by the simple act of suing the judge.").

"The general rule in Washington, commonly referred to as the 'American rule,' is that each party in a civil action will pay their own attorney fees and costs." Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013) (citing Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc., 159 Wn.2d 292, 296, 149 P.3d 666 (2006)). Trial courts may modify this rule by awarding attorney fees "only if authorized by contract, statute, or a recognized ground in equity." In re Impoundment of Chevrolet Truck, 148 Wn.2d 145, 160, 60 P.3d 53 (2002) (citing Bowles v. Dep't of Ret. Sys., 121 Wn.2d 52, 70, 847 P.2d 440 (1993)).

In support of his request, Jovee cites Washington case law which holds that pro se litigants are required to comply with applicable rules and statutes to the same responsibility as an attorney. See In re Pers. Restraint of Bonds, 165 Wn.2d 135, 143, 196 P.3d 672 (2008), State v. Vermillion, 112 Wn. App. 844, 858, 51 P.3d 188 (2002). Jovee argues that "limiting pro se litigants the right to recover costs and fees . . . would be promoting suppression and/or deterrence for pro se litigants bringing forth legitimate claims . . ." He provides no authority that supports a fee award for a pro se litigant.

While we have "explained that *lawyers* who incur fees representing themselves should be awarded attorney fees where fees are otherwise justified because they must take time from their practices to prepare and appear as any other lawyer would," no Washington "case extends this reasoning to a nonlawyer pro se litigant." In re Marriage of Brown, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011) (citing Leen v. Demopolis, 62 Wn. App. 473, 486-87, 815 P.2d 269 (1991)). It is Washington law that non-lawyer litigants who choose to represent themselves have incurred no attorney fees, and thus can neither earn attorney fees nor be entitled to awards of attorney fees. West v.

6

Thurston County, 168 Wn. App. 162, 195, 275 P.3d 1200 (2012).  Jovee's request for attorney fees is denied.

CONCLUSION

We vacate[4] the commissioner's March 18 order and remand for a different judicial officer to consider Jovee's petition for a DVPO.[5]

Colun, J.

WE CONCUR:

Birk, J.

Brunnun, J.

---

[4] Because we vacate and remand, we need not address Jovee's substantive assignments of error as to the March 18 order entered.

[5] We decline Jovee's request to direct remand before a "non-biased judicial officer" in an adjacent county.  Jovee has not established grounds to support such a request.